1
2
3
4                       UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7     NINA XIAOYAN LI,                         Case No. 23-cv-03347-JSW   (TSH)
8                      Plaintiff,
9             v.                               **DISCOVERY ORDER (PUBLIC VERSION OF ECF NO. 162)**
10    MERCK & CO., INC., et al.,               Re: Dkt. No. 89
11                     Defendants.
12

13          Defendants (together, "Merck") have filed a motion for sanctions against Plaintiff. It has

14   three parts. First, Defendants seek a permissible adverse inference instruction pursuant to the

15   Court's inherent authority (which governs non-ESI sanctions) that Plaintiff deleted three

16   categories of paper documents: (1) pen and paper edits by Plaintiff and her daughter, which

17   Plaintiff admits have been thrown away; (2) documents Plaintiff printed and removed from Merck

18   within the last 90 days of her employment; and (3) documents Plaintiff solicited from a current

19   Merck employee after her termination, which were mailed to her.

20          Second, Defendants seek two alternative sanctions pursuant to Federal Rule of Civil

21   Procedure 37 (which governs ESI sanctions), resulting from Plaintiff's alleged deletion and failure

22   to preserve communications between herself and third parties. Primarily, Defendants seek an

23   independent, third-party forensic analysis of Plaintiff's devices as well as devices belonging to her

24   husband. Alternatively, Defendants seek an instruction that Plaintiff deleted electronic

25   communications.

26          Third, Defendants seek sanctions against Plaintiff's counsel pursuant to Federal Rule of

27   Civil Procedure 26(g)(1)(B) and (g)(3), in the amount of $5,000, for certifying a discovery

28   response without conducting a reasonable inquiry.

Plaintiff filed an opposition.  ECF No. 101.  Merck filed a reply.  ECF No. 103.  The parties then filed a series of supplemental briefs.  ECF Nos. 122, 126, 131-2, 139.  The Court now rules as follows.

**A.    Inherent Power Sanctions**

**1.    Duty to Preserve**

A major dispute between the parties that matters a great deal to the inherent power sanctions is when Plaintiff anticipated litigation and thus had a duty to preserve.  Merck says that Plaintiff anticipated litigation no later than December 2022.  ECF No. 89 at 3-4.  Plaintiff says she did not contemplate suing Merck until she was fired in March 2023 and escorted out of the building by security.  ECF No. 101 at 3.

The Court thinks Plaintiff has the better of the argument.  By December 2022, Plaintiff had an HR dispute within Merck, but there is no indication she was thinking of suing the company.  In December 2022, Plaintiff's daughter, Grace Chen, texted Plaintiff a link to a lawyer referral service in Alameda County.  ECF No. 89-31.  Chen testified she sent the link because her mother "really felt she needed to seek legal consultation to understand her legal rights, and she told me that and how much she was struggling at the time, and that's the reason why I sent that link to her, so that she could basically find a lawyer who she could just consult with."  ECF No. 89-6 at 26-27.  And Plaintiff did consult with a lawyer at the time.  ECF No. 86-3; ECF No. 101-2 at 451.  When asked "Do you know when your mother first started thinking about filing a lawsuit against Merck?" Chen answered:  "I believe we talked about her filing a lawsuit after she was fired and felt that she was wrongfully terminated."  ECF No. 101-3 at 18.

Plaintiff similarly testified that she consulted with a lawyer in December 2022 because "I just wanted to find out why I was treated the way I'm being treated, whether it's legal or illegal.  I just want to know about that."  ECF No. 101-2 at 451-52.  She says in her declaration that:  "In December 2022, I began contacting attorneys to better understand my legal rights.  In the meantime, I continued to do everything possible to work within Merck's system to address the retaliation I continued to face, including further interviews with the Office of Ethics, an extended interview with HR, and a detailed letter to Merck MRL's Vice President, George Addona,

describing the ongoing retaliation and requesting his intervention. Despite several attorneys offering their litigation services, I declined because I was not interested in litigation at the time. I continued to reach out to HR and the OOE for assistance until my termination." ECF No. 101-14 ¶ 2. Merck tries to spin Plaintiff's consultation with a lawyer in December 2022 as though she had "lawyered up" at that point. But that's not true. She did not retain counsel until after she was fired.

Merck points to a text message exchange between Plaintiff and Liangsu Wang, her former manager, on December 14, 2022. Plaintiff said: "we talked with two lawyers, both of them want to take my case move forward." But then she added: "Yeah, the strategy will be settled down with the company, which is the same as what I'm doing by myself. But I think with the lawyer, I have more options." ECF No. 130-3. It's not 100% clear what that means, but the better interpretation is the one that is consistent with Plaintiff's and Chen's testimony that Plaintiff consulted with an attorney in connection with her HR issue at work, which she was handling through Merck's internal processes. That was a perfectly good reason to consult with a lawyer, and it doesn't mean she was considering filing a lawsuit. For a highly skilled employee like Plaintiff to sue a current employer is something many people in Plaintiff's position would find unpalatable, and there is no indication she was contemplating suing Merck until she was fired.

Merck points out that even before December 2022, Plaintiff had been watching YouTube videos "to understand retaliation and discrimination mostly from – trying to understand her legal rights." ECF No. 89-6 at 24-25; ECF No. 89-3 at 116-17. Merck also points to several instances in which Plaintiff took screen shots or saved documents related to her HR dispute. ECF Nos. 103-6 to 103-12. But this behavior is consistent with having a significant HR dispute at work, and it is clear that she had one.

Merck relies on broad propositions of law that the duty to preserve does not arise only when someone has made a final decision to sue, that the duty to preserve can arise long before a lawyer is actually hired, and so on. The Court does not disagree with those general propositions. But on the facts of this case, there is no indication that Plaintiff was contemplating suing Merck until she was fired. Please bear in mind that one of the allegedly discriminatory and retaliatory

acts she is suing over is her termination, which of course did not happen until she was fired. Complaint, ECF No. 1-1 ¶ 13.  On that day her efforts to work within Merck's system came to an end and litigation became her only remedy.  It is not strange that someone would begin contemplating a lawsuit when that became her only option.

Merck cites *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326 (D. Ariz. 2022), in which the court found that plaintiff's duty to preserve began in May 2018, when plaintiff and her co-worker started gathering evidence for a lawsuit, sending messages such as "[s]o if GoDaddy deletes ours on slack between what u have saved and I have *u will be good to sue*," and "[y]ep and then sue while on disability" to which plaintiff responded, "Exactly."  *Id*. at 337 (emphasis added). Plaintiff had also retained counsel in May.  This led the court to conclude that the duty to preserve arose in May, "when [plaintiff] formed the intent to sue GoDaddy," *id*.  But that case merely emphasizes what is missing in this case in the time period before Plaintiff was fired.

The other cases Merck cites are a sort of grab bag of preservation cases that do nothing to bolster Merck's arguments here.  *See Barsoum v. NYC Housing Authority*, 202 F.R.D. 396, 400 (S.D.N.Y. 2001) ("Barsoum had a duty to preserve the tape recording of her meeting with Meyer because, given that she was already receiving assistance from counsel at that time, she knew or should have known that it was reasonably foreseeable that the tape would be relevant to future litigation.  Moreover, as of the day in July 2000 when the tape disappeared, this litigation had already ensued, and Barsoum had been specifically put on notice by her counsel that the tape was needed in order to respond to the Defendants' discovery requests."); *Champions World, LLC v. U.S. Soccer Federation*, 276 F.R.D. 577, 582 (N.D. Ill. 2011) ("There is no real dispute between the parties" about the duty to preserve.); *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006) (duty to preserve arose when individual received the following threat:  If you do not "instantaneously comply with the injunction, we will sue the venture firm and you people personally."); *Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998, *3 (C.D. Cal. Oct. 5, 2023 ("Evidence that a defendant actually anticipated litigation might include emails or meeting minutes discussing potential litigation, actions taken to retain a lawyer, or a company budget that allocates funds for potential litigation," none of which happened here until Plaintiff

United States District Court
Northern District of California

1  was terminated), *report and recommendation adopted*, 2023 WL 7634109 (C.D. Cal. Nov. 13,

2  2023); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) ("The

3  threat of future litigation was clear: the letter informed Phelps that some investors 'have sought

4  independent legal advice and are anticipated to claim approximately two million dollars in

5  damages'"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012)

6  ("[B]y the time Apple presented Samsung with its infringement positions in August 2010, the

7  relationship had soured, and litigation would plausibly follow."); *PersonalWeb Techs, LLC v.*

8  *Google Inc.*, 2014 WL 580290, *3 (N.D. Cal. Feb. 13, 2014) ("[B]ecause PersonalWeb was . . .

9  openly discussing litigation as early as May, the Court finds that litigation was reasonably

10  foreseeable so as to trigger a duty to preserve evidence when PersonalWeb first acquired

11  Truenames patents in July 2011.").

12       There is no mention of litigation or potential litigation by Plaintiff before she was fired, not

13  even in texts or emails with colleagues or family members. She turned down legal representation

14  she was offered. It doesn't seem like she was contemplating a lawsuit until she was fired.

15  Accordingly, the Court finds that Plaintiff's duty to preserve arose when she was terminated.

16       **2.    First and Second Sets of Paper Documents**

17       The Court's conclusion regarding the date when Plaintiff's duty to preserve arose renders

18  moot two thirds of the inherent power motion.

19       The first set of documents is paper edits that Chen made to Plaintiff's draft work-related

20  emails concerning her HR dispute. These were all pre-termination, and Plaintiff threw them away.

21  ECF No. 89 at 4-5 ("In the period leading up to her termination, Plaintiff worked closely with her

22  daughter, Ms. Chen, to craft emails and documents that are important to this case, including (i)

23  Plaintiff's correspondence with her manager, Merck HR, and Merck executives, as well as (ii)

24  correspondence from other Merck employees to Merck HR. Much of that work was done by

25  editing documents with pen and paper."); ECF No. 101 at 6.

26       The second set of documents is unknown. In response to Merck's interrogatory 17,

27  Plaintiff states in relevant part:

28            With respect to documents printed and removed from the workplace

5

1
2
3
4
5
6
7

during the last 90 days of Plaintiff's employment, because it has been nearly two years since Plaintiff was terminated and she was in a state of deep and profound emotional distress, including in the last 90 days leading to her termination, she is unable to identify with specificity the documents printed and removed. To the best of Plaintiff's memory the subject matter of the emails she printed, retained and took during the last 90 days of her employment concerned the harassment, discrimination and retaliation to which she was being subjected, her efforts to respond to and report said harassment, discrimination and retaliation, and Defendants' response to those efforts. While Plaintiff cannot remember the exact emails she printed, retained and took during that period, she can say with absolute certainty that at no time did she take any Merck trade secret materials.

8   ECF No. 89-16. The implication is that Plaintiff threw these away as well. We do not know if

9   there were many such documents or only a few.

10          For these two sets of documents, Merck does not make the argument that Plaintiff threw

11   them away after she was terminated. Nor does Merck put forth any evidence to show that's when

12   they were destroyed. Rather, Merck's spoliation argument hinges on the duty to preserve having

13   started in December 2022. As the Court does not find that the duty to preserve arose pre-

14   termination, the Court rejects Merck's spoliation argument for these two sets of documents.

15          **3.      Third Set of Paper Documents**

16          A text message exchange between Plaintiff and her former co-worked Xiaolan Shen in

17   March 2023 (after Plaintiff was terminated) indicates that Shen mailed her something. Merck

18   provides a short version of the text exchange at ECF No. 89-27, and Plaintiff provides a longer

19   one at ECF No. 101-5. Whatever Shen mailed seems like it would be responsive to Merck's RFP

20   50, a contention that Plaintiff does not dispute.

21          Merck argues that Shen mailed Plaintiff a TADR slide, which apparently contains Merck

22   confidential information. The primary basis for this suggestion is that shortly after Shen writes

23   "Found TADR slide deck," he writes "Give the home address." But here is where the truncated

24   exhibit Merck submits is misleading. In the longer example Plaintiff provides, two pages before

25   Shen asks for Plaintiff's home address, Plaintiff explicitly asks him to send her three emails:

26   "Anyway, don't forget to send me 1) Alex insubordination email that I sent to you 2) your 2nd

27   email about my survey feedback 3) The email about Thomas email I sent to you." ECF No. 101-5.

28          Plaintiff states in her declaration that Shen did not mail her the TADR deck. ECF No. 101-

United States District Court
Northern District of California

14 ¶ 3.  Shen says the same in his deposition.  ECF No. 122-2 at 20.  Shen testified that he mailed her print outs of three work emails related to her HR dispute.  ECF No. 122-2 at 19, 29-30; *see also* ECF No. 122-3.  Assuming Shen mailed printed versions of emails, the parties disagree about whether Plaintiff produced those.  Plaintiff says yes, identifying the emails in ECF No. 101-6.  Merck says this is implausible because the header indicates Plaintiff printed those out, not Shen.

This dispute is unimportant.  Between Plaintiff's declaration and Shen's deposition, there is no basis to think Shen mailed her the TADR slide deck, and every basis to think he mailed her print outs of emails concerning her HR dispute.  We don't need certainty about which particular emails he mailed to her because all of the options are internal Merck emails, so Merck has them.  And there is no reason to think that internal Merck emails about Plaintiff's HR dispute would contain, for example, a Merck trade secret – so the identification of the particular emails that were mailed is not relevant to this case.  Even if Plaintiff threw out the printed emails that Shen mailed her in violation of her duty to preserve, Merck was not deprived of any documents or any relevant information.  There would therefore be no basis for sanctions.

### 4.    Conclusion Regarding Inherent Power Sanctions

The Court **DENIES** Merck's request for inherent power sanctions.

## B.    Rule 37 Sanctions

Next, Merck moves for sanctions under Rule 37(e) for failure to preserve ESI.  Later, in its reply brief, Merck will start citing cases about inherent power, Rule 37(b) and violations of discovery orders in connection with ESI.  ECF No. 103 at 11 (citing *North American Watch Corp. v. Princes Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)); *id*. at 12-13 (citing *Keithley v. Homes Store.com, Inc*., 2008 WL 3833384 (N.D. Cal. Aug. 12, 2008); *Star Envirotech, Inc. v. Redline Detection, LLC*, 2015 WL 9093561 (C.D. Cal. Dec. 16, 2015); *Currin v. Presidio Networked Sols. Grp*., 2018 WL 4825184 (D. Or. Oct. 4, 2018)).  Merck will also move to citing cases about motions to compel.  *Id*. at 13-14 (citing *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 3371576 (N.D. Cal. Nov. 21, 2006); *Ascar v. U.S. Bank, N.A.*, 2014 WL 1269926 (C.D. Cal. Sept. 25, 2014); *Dawe v. Corrections USA*, 263 F.R.D. 613 (E.D. Cal. 2009); *Global Ampersand, LLC v. Crown Engineering & Constr., Inc.*, 261 F.R.D. 495 (E.D. Cal. 2009)).  Merck

United States District Court
Northern District of California

1    will also pivot in its reply to contend that "spoliation or not, forensic examinations are routinely

2    ordered in such cases to examine to what extent the Plaintiff distributed or used the alleged trade

3    secrets." *Id*. at 14.  But the ESI motion that Merck actually filed is a straight-up Rule 37(e)

4    motion and nothing else.  ECF No. 89 at 20-23.

5      Rule 37(e) states:  "If electronically stored information that should have been preserved in

6    the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to

7    preserve it, and it cannot be restored or replaced through additional discovery, the court" may take

8    a variety of steps.  But before the Court can do anything, ESI has to be "lost" and it "cannot be

9    restored or replaced through additional discovery."

10      The Court has already found that Plaintiff's document production was "a complete mess."

11    ECF No. 114.  The Court explained:  "This is not a proper document production.  Although

12    Plaintiff is represented by counsel, it is obvious that counsel handed off document collection to

13    their client, and documents were never collected in an appropriate way. . . . [D]ocuments were not

14    properly collected from Plaintiff's personal email account, cell phone, or other electronic devices."

15    *Id*.  The Court ordered "Plaintiff to redo her document collection and production.  Counsel must

16    retain a document vendor to collect Plaintiff's documents in the normal way that documents are

17    collected for litigation, and counsel must review and produce them."  *Id*.

18      Merck's ESI spoliation motion is directed at the state of Plaintiff's ESI production back in

19    January when the motion was filed.  It appears that some combination of Merck's subpoenas to

20    Plaintiff's husband, Hainan Chen, and her daughter; the Court's December 10, 2024 order (ECF

21    No. 58); and this spoliation motion caused Plaintiff's counsel to discover Plaintiff had unproduced

22    ESI.  ECF No. 101 at 9-10.  The question the Court faces now, having already ordered Plaintiff to

23    redo her document collection and production, is whether the Court should do something more.

24      The Court thinks that on the current record, Merck cannot show there is ESI that has been

25    lost and that cannot be restored or replaced through additional discovery.  In its motion, Merck's

26    attempt at showing ESI spoliation consisted of document productions and testimony from Merck

27    and third parties concerning emails and text messages with Plaintiff that Plaintiff herself did not

28    produce.  ECF No. 89 at 4-5, 12-13.  Merck said this "demonstrate[d] that she deleted them."  *Id*.

United States District Court
Northern District of California

1  at 13.  But that conclusion didn't follow.  It demonstrated that there was something wrong with her

2  document production, for sure, but it wasn't clear what.  There was also the problem that Merck's

3  motion never addressed whether the missing documents, if they were deleted, cannot be restored

4  or replaced through additional discovery.  Communications, after all, are with other people.  And

5  it sounds like the other people were either at Merck or Merck subpoenaed them.  Sometimes

6  litigants make the argument that the "other people" on those communications are impossible to

7  identify or find, or that they do not likely have the communications still, *see Jones v. Riot*

8  *Hospitality Group LLC*, 2022 WL 3682031, *5 (D. Ariz. Aug. 25, 2022) ("And the Court finds

9  that these messages cannot be restored or replaced through additional discovery.  Plaintiff deleted

10  these messages five years ago.  There is no guarantee that the potential custodians of the deleted

11  messages can be found or that they still have access to the text messages Plaintiff deleted in 2017

12  and 2018."), but Merck hasn't made any arguments like that here.

13         The closest Merck came to this was to criticize Plaintiff's counsel's preservation efforts

14  directed at third-party witnesses.  Plaintiff's daughter was not advised to refrain from deleting

15  documents related to the case until she was subpoenaed.  ECF No. 89-6 at 101-02.  Plaintiff's

16  husband was never given that advice.  ECF No. 89-13 at 86.  Ruth Villanueva testified that she

17  was not given advice not to delete relevant materials prior to the time she retained Plaintiff's

18  counsel, and counsel objected to her testifying about whether they gave her that advice after they

19  were retained.  ECF No. 89-18 at 29-31.  Suzette Farber-Katz was advised not to delete any

20  materials relating to this case when she was subpoenaed.  ECF No. 89-17 at 15.  But this evidence

21  falls short of actually showing that any lost communications cannot be restored or replaced.  ECF

22  No. 89-13 at 86 (Plaintiff's husband:  "I did not delete anything."); ECF No. 89-6 at 101

23  (Plaintiff's daughter could not remember when she last cleaned out her email inbox); ECF No. 89-

24  18 at 29 (Villanueva not aware of any materials that would be responsive to the subpoena that she

25  doesn't have anymore); ECF No. 89-17 at 105 (Farber-Katz deleted a group text involving

26  Plaintiff that took place in September 2024, but Plaintiff says she has the group text and she

27  produced it, ECF No. 101-1 ¶ 23)).

28         But let's turn back to Plaintiff.  There were documents missing from Plaintiff's document

1    production. Her lawyers say she turned them over to them, who missed them but then found them

2    and produced them on January 30, 2025. ECF No. 101-1 ¶¶ 10-11. According to Merck, Plaintiff

3    has actually made several additional document productions since the filing of this motion. ECF

4    No. 103 at 11; ECF No. 126 at 4. As matters stand now, Merck has not identified any ESI that is

5    both "lost" from Plaintiff and that "cannot be restored or replaced through additional discovery,"

6    meaning the other people she was communicating with. Merck does not present any coherent

7    argument of the form "Plaintiff has lost A, B and C, and those items cannot be restored or replaced

8    through additional discovery because of reasons X, Y and Z." Merck is therefore entitled to no

9    remedies under Rule 37(e).

10         In denying Merck's Rule 37(e) motion, the Court does not mean to suggest that Plaintiff's

11    piecemeal and untimely ESI production was satisfactory, and indeed the Court's prior order for

12    Plaintiff to redo her document collection and production from scratch does not send the message

13    that Plaintiff's counsel conducted discovery in an acceptable manner. But at the same time,

14    Merck's ESI motion was a pure Rule 37(e) motion. It did not seek monetary sanctions under the

15    Court's inherent power or Rule 37(b), and it wasn't a motion to compel. The gating item under

16    Rule 37(e) is lost ESI that can't be restored or replaced, and Merck ultimately came up empty.

17    Indeed, the Court gets the impression that by the time Merck filed its reply brief, it wished it had

18    filed a different motion.

19         Accordingly, Merck's Rule 37(e) motion is **DENIED**.

20    **C.    Rule 26 Sanctions**

21         Finally, Merck seeks sanctions under Rule 26 against Plaintiff's counsel. Rule 26(g)(1)(B)

22    states in part that "[b]y signing, an attorney . . . certifies that to the best of the person's knowledge,

23    information, and belief formed after a reasonable inquiry . . . with respect to a discovery . . .

24    response . . . it is" consistent with the rules, not interposed for any improper purpose, and neither

25    unreasonable nor unduly burdensome or expensive. Rule 26(g)(3) states that if a certification

26    violates Rule 26 without substantial justification, the Court must impose an appropriate sanction.

27         Here, Merck argues that Plaintiff's counsel's signing Plaintiff's October 21, 2024 RFP

28    responses did not comply with Rule 26 because of the response to RFP 76. It requested all

United States District Court
Northern District of California

10

1    documents and communications between Plaintiff and her daughter relating to the case, and

2    Plaintiff responded:  "Plaintiff responds that she is unable to comply because despite a diligent

3    search and reasonable inquiry responsive documents either never existed or were thrown away (as

4    with the edits Ms. Chen suggested to Plaintiff's pretermination communications with

5    Defendants)."  ECF No. 89-9.

6         Everyone agrees that discovery response was false.  And Plaintiff's counsel knew it was

7    false by at least the beginning of December.  ECF No. 101-1 ¶¶ 9-10.  Plaintiff's counsel say they

8    relied on their client, who had forgotten about the electronic communications with her daughter.

9    ECF No. 101 at 25; *see also* ECF No. 101-14 ¶ 10.  But there are two problems with that excuse.

10   First, it doesn't work because Rule 26 doesn't let counsel hand off responsibility for document

11   collection to the client and then just hope for the best.  *See, e.g., Logtale, Ltd. v. KOR, Inc.*, 2013

12   WL 3967750, *2 (N.D. Cal. July 31, 2013) ("[I]t is not enough for counsel to simply give

13   instructions to his clients and count on them to fulfill their discovery obligations. The Federal

14   Rules of Civil Procedure place an *affirmative obligation* on an attorney to ensure that a client's

15   search for responsive documents and information is complete.") (emphasis original).  Counsel was

16   not entitled to rely on her client's memory of what documents existed.  Counsel was required to

17   ensure that her client's search for responsive documents was diligent, and a diligent search would

18   have turned up the many documents responsive to RFP 76.

19        And that brings us to the second problem.  Counsel say they did not hand off all

20   responsibility to Plaintiff to search for documents.  They say that they did text extractions from her

21   phone on multiple occasions starting in January 2024, and they logged into her personal email

22   accounts and extracted responsive documents.  ECF No. 101-1 ¶¶ 25-27.  But the search terms

23   Plaintiff's counsel say they used to find text messages and emails responsive to RFP 76, *see* ECF

24   No. 101-13, look great.  If Plaintiff's counsel ran the search they claim they did, they would of

25   course have located responsive communications with Plaintiff's daughter.  This makes it even

26   more indefensible to rely on Plaintiff's memory of what documents existed in responding to the

27   RFP.

28        Accordingly, the Court finds that the attorney that signed the October 21, 2024 discovery

1   responses violated Rule 26 and should be sanctioned.

2          "The sanction may include an order to pay the reasonable expenses, including attorney's

3   fees, caused by the violation."  Fed. R. Civ. Proc. 26(g)(3).  Merck's attorneys spent between 30

4   and 40 hours (including paralegal time) working on the issue of the absence of electronic

5   communications between Plaintiff and her daughter, for an expense to Merck of well over

6   $25,000.  ECF No. 89-1 ¶ 45.  Merck requests a small fraction of that in sanctions – only $5,000.

7   The Court finds that the requested sanction is reasonable.  Accordingly, the Court **GRANTS**

8   Merck's motion for Rule 26 sanctions and **SANCTIONS** attorney Deborah Kochan $5,000,

9   payable to Merck within 30 days.

10          **IT IS SO ORDERED.**

11

12   Dated: July 21, 2025

13

14                                    THOMAS S. HIXSON
                                      United States Magistrate Judge

United States District Court
Northern District of California