UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA XIAOYAN LI,<br><br>    Plaintiff,<br><br>v.<br><br>MERCK & CO., INC., et al.,<br><br>    Defendants. | Case No. 23-cv-03347-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 147, 152 |

Now before the Court are the motion for summary judgment filed by Defendants Merck & Co., Inc., MRL San Francisco LLC, Merck Sharp & Dohme, LLC, and Merck Sharp & Dohme, Corp. (collectively "Merck" or "Defendants") and the cross-motion for summary judgment filed by Plaintiff Nina Li. Merck moves for summary judgment on Plaintiff's second, third, and fourth causes of action and their own first and second causes of action. Plaintiff moves for summary judgment on Merck's counterclaims for misappropriation of trade secrets and breach of contract.

**BACKGROUND**

Plaintiff worked as a scientist at Merck from 2006 to 2023. Her claims of discrimination and retaliation relate only to the latter period of her employment, from July 2020 to March 2023, when she was supervised by Alexander Loktev. Plaintiff reported Loktev for alleged bias against one of her mentees, James Zhang, which she claims lead to Zhang's decision to quit working at Merck. Although she had previously participated in interviewing prospective candidates, Plaintiff was excluded from such interviews after Loktev was supervising her. Plaintiff contends the

1    exclusion was based on racial motives, but Loktev claimed he could no longer trust her when she
2    disparaged Merck's program to a candidate.  After Zhang left, Plaintiff alleges that she was no
3    longer assigned the role as a mentor.  Loktev claimed she was criticized as a mentor and had not
4    been doing a good job previously with Zhang.  Plaintiff also claims that, after Zhang left, Loktev
5    began to deprive her of support and forced her to get resources from other scientists or sites to
6    advance her projects.  Plaintiff also claims that Loktev began to remove her from high-profile
7    studies and teams.  Loktev claims that, during this time, Plaintiff excluded him from her team's
8    regular meetings and updates.  At the end of 2021 and for the first time in her career at Merck,
9    Plaintiff received an "improvement required" evaluation from her supervisor, in response to which
10   Plaintiff submitted a detailed rebuttal listing her various accomplishments.  Plaintiff alleges that
11   the poor evaluation occurred 10 weeks after she reported discrimination and retaliation by Loktev
12   to HR and two months after her March 2022 report of discrimination.

13         In early March 2022, after the poor evaluation, Plaintiff reported to HR Director Freishtat
14   that she was being subjected to retaliation and requested a third-party review of materials relating
15   to the facts underlying both the performance review and her allegations of retaliation in being
16   dropped from interviews, high-profile projects, and being denied resources for her work.
17   In August 2022, Merck's Office of Ethics ("OOE") opened an investigation in response to
18   Plaintiff's reports of retaliation.  On November 1, 2022, Loktev issued a "Performance
19   Expectations Memo" threatening Plaintiff's termination on the basis of reported poor
20   communication and leadership behavior.  Plaintiff alleges that this adverse action occurred two
21   months after Loktev was interviewed by the OOE as the subject of Plaintiff's discrimination and
22   retaliation complaint.  Again, in his year-end review of Plaintiff, Loktev evaluated Plaintiff as
23   "Improvement Required."  Plaintiff alleges that Loktev overlooked and misrepresented the
24   feedback from stakeholders and solicited input from non-stakeholders as well.  Merck's OOE
25   investigated Plaintiff's three complaints of discrimination and retaliation and found them each
26   unfounded.

27         On March 9, 2023, Plaintiff reported to Loktev's office for her year-end review.  When she
28   arrived, she was told she was being terminated and was thereafter directed out of the office where

1  she was escorted briefly to her desk and then down to the lobby to exit the building.  After her

2  termination, there is evidence in the record that Plaintiff continued to discuss issues with Merck

3  employees about her own employment contentions as well as data generated by Merck.

4  The Court shall address other additional facts as necessary in the remainder of this order.

## ANALYSIS

### A. Legal Standard on Motion for Summary Judgment.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *Id.* at 248-49.  "The trial court's inquiry is not whether a reasonable trier of fact is likely to find in favor of the opposing party, but whether it could do so."  *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1085 (S.D. Cal. 2021) (citing *McIndoe v. Huntington Ingalls*, 817 F.3d 1170, 1176 (9th Cir. 2016)).

The Court views the evidence in the light most favorable to, and makes all reasonable inferences in favor of, the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).  The Court does not weigh conflicting evidence or make credibility determinations.  *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the nonmoving party must then go beyond the pleadings and, by its own affidavits or exhibits, demonstrate a genuine issue of fact remains for trial.  *Id.*

### B. Triable Facts Remain as to Discrimination Claim.

California has adopted a three-stage burden-shifting test for trying claims of discrimination.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (citing, *inter alia*, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)).  Under this framework, a plaintiff must first establish a prima facie case of discrimination.  *Id.*  To state a prima facie claim for

1  discrimination, a plaintiff must allege (1) membership in a protected group; (2) qualification for
2  the job in question; (3) an adverse employment action; and (4) circumstances that support an
3  inference of discrimination. *Id.* at 355; *see also McDonnell Douglas v. Green*, 411 U.S. 792, 802
4  (1973). "The burden of establishing a prima facie case of disparate treatment is not onerous."
5  *Burdine*, 450 U.S. at 253. Actual proof of discrimination is not required to establish a prima facie
6  case; plaintiff must merely raise an inference that discrimination has occurred. *See Warren v. City
7  of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995) (holding that even a "*de minimus´* showing is
8  sufficient to establish a prima facie case); *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir.
9  1985) (holding that the plaintiff need only offer evidence which "gives rise to an inference of
10 unlawful discrimination."). Once the plaintiff establishes a prima face case, "a presumption of
11 discrimination arises." *Guz*, 24 Cal. 4th at 355.

12 After plaintiff establishes a prima facie case, the burden then shifts to the defendant to
13 articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 355-56. "To
14 accomplish this, the defendant must clearly set forth, through the introduction of admissible
15 evidence, the reasons for the [employment decision]." *Burdine*, 450 U.S. at 255. "If the defendant
16 carries this burden of production, the presumption raised by the prima facie case is rebutted." *Id.*
17 "[W]hether or not a plaintiff has met his or her prima facie burden, and whether or not the
18 defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court,
19 not questions of fact for the jury." *Caldwell v. Paramount Unified School Dist.*, 41 Cal. App. 4th
20 189, 201 (1995).

21 Then, the burden shifts back to the plaintiff to "offer evidence that the employer's stated
22 reason is either false or pretextual, or evidence that the employer acted with discriminatory
23 animus, or evidence of each which would permit a reasonable trier of fact to conclude the
24 employer intentionally discriminated." *Kannan v. Apple Inc.*, 2020 U.S. Dist. LEXIS 193214, *9
25 (N.D. Cal. Oct. 13, 2020). "[T]he plaintiff in an employment discrimination action need produce
26 very little evidence in order to overcome an employer's motion for summary judgment." *Id.* at
27 *10 (quoting *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017)).

28 For a discrimination claim, Plaintiff first needs to establish her prima facie case. Merck

4

1    contends there are no circumstances that raise an inference of discrimination.  Despite Defendants'
2    arguments, the Court concludes Plaintiff met her prima facie burden.  *See Caldwell*, 41 Cal. App.
3    4th at 201.  Plaintiff is a member of a protected group by virtue of her race, and was qualified for
4    her job, and was subject to adverse employment actions.  Plaintiff also alleges an inference of
5    discrimination because her discrimination complaints were not fully investigated, her mentee who
6    was also Chinese was criticized to the point of him leaving the company, and Plaintiff claims the
7    motivation behind her sudden poor evaluations was the same manager discriminating against her.
8    Because Plaintiff is the non-moving party, the facts she alleges must be taken as true for the
9    adverse employment actions and discriminatory inference.

10   Next, the burden shifts to Defendants, who articulated nondiscriminatory reasons for
11   Plaintiff's poor evaluations and eventual termination based exclusively on her performance at the
12   company and inability to mentor junior scientists.  The burden then shifts back to Plaintiff to offer
13   evidence that Defendants' stated legitimate, nondiscriminatory reason is false and pretextual.
14   Here, there are genuine disputes of material fact that would not entitle Defendant to summary
15   judgment based on the earlier departure of Zhang, the sudden poor performance evaluations after
16   Loktev took over as manager, and her termination.  The timing and reasons given for her poor
17   performance evaluations and criticisms may or may not have been related to discrimination based
18   on race and remain the subject of disputed facts.

19   Accordingly, the Court DENIES Defendants' motion for summary judgment on Plaintiff's
20   race discrimination claim.

21   **C. Triable Facts Remain as to Unlawful Retaliation Claim.**

22   It is unlawful "[f]or any employer, labor organization, employment agency, or person to
23   discharge, expel, or otherwise discriminate against any person because the person has opposed any
24   [prohibited discriminatory] practices … or because the person has filed a complaint, testified, or
25   assisted in any proceeding [in connection with a prohibited discriminatory practice]."  Cal. Gov't
26   Code § 12940(h).  California has adopted a three-stage burden-shifting test for trying claims of
27   retaliation.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).  To establish a prima
28   facie case of retaliation, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2)

1    the employer subjected the employee to an adverse employment action, and (3) a causal link
2    existed between the protected activity and the employer's action." *Id.*  Once an employee
3    establishes a prima facie case, the employer must then offer a legitimate, nonretaliatory reason for
4    the adverse employment action. *Id.*  If the employer can produce a legitimate reason for the
5    adverse employment action, the presumption drops, and the employee must prove intentional
6    retaliation. *Id.*

7    Here, there is a genuine dispute of material fact about whether Plaintiff established a prima
8    facie case for retaliation that would not entitle Defendants to judgment as a matter of law.  It is
9    undisputed that Plaintiff engaged in the protected activity of filing three complaints with Merck
10   about discrimination based on her race.  There is a dispute, however, regarding the last two
11   elements for a prima facie case.  Plaintiff argues that there were adverse employment actions taken
12   after and because of her complaint in the form of reducing Plaintiff's opportunities at work as well
13   as resources for her project, Defendants' lack of investigation into her complaints, and ultimately
14   her termination from employment.  Because the Court cannot weigh the evidence, a genuine issue
15   of material fact exists as to whether there is a causal connection between these adverse
16   employment action and her protected activity.

17   Further, Defendants claim the restrictions on Plaintiff's exposure at work, access to
18   resources, and her termination were legitimate and nonretaliatory.  Beside the complicated record
19   of annual reviews – which Plaintiff claims were also retaliatory – Merck provides no further
20   argument or evidence to support their claims.  Therefore, Merck did not meet their burden of
21   production for summary judgment.

22   Accordingly, the Court DENIES Defendants' motion for summary judgment as to
23   Plaintiff's unlawful retaliation claim.

24   **D. Punitive Damages Claim.**

25   In order to state a claim meriting the award of punitive damages, Plaintiff must allege, by
26   clear and convincing evidence, "the additional component of 'despicable conduct,'" meaning the
27   "circumstances … are 'base,' 'vile,' or 'contemptible.'" *Holland v. Related Cos., Inc.*, 2017 WL
28   3086104, at *9 (N.D. Cal. July 20, 2017) (quoting *College Hosp. Inc. v. Superior Ct.*, 8 Cal. 4th

704, 725 (1994)). "Clear and convincing" means "a finding of high probability … so as to leave no substantial doubt; sufficiently strong to commend that unhesitating assent of every reasonable mind." *Id.* at *6 (quoting *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009)).

In this matter, Plaintiff has not alleged facts or offered any evidence "of conduct which is despicable or malicious." *Melikov v. Ghilotti Bros.*, 2022 WL 1540032, at *4 (N.D. Cal. May 16, 2022) (granting summary judgment on a punitive damages claim). Neither Plaintiff's allegations in her complaint nor the evidence she marshalled at summary judgment indicate that there was conduct that was base, vile, contemptible, despicable, or malicious. Rather, Plaintiff complains that the leadership at Merck failed to investigate her allegations of race discrimination and contends that their apparent "reliance on sources known to be unreliable or biased against the complainant" constitutes the type of extreme conduct potentially meriting punitive damages. (Opp. Br. at 21.) Although Plaintiff contends that Merck failed to conduct their investigations properly, she does not allege or provide evidence of despicable conduct giving rise to punitive damages.[1]

Accordingly, the Court finds there is no basis for Plaintiff to seek punitive damages on her claims and the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's claim for punitive damages.

**E. Plaintiff's Motion for Summary Judgment.**

Plaintiff also moves for summary judgment on Merck's counterclaims for misappropriation of trade secrets and breach of her employment contract. The parties maintain a dispute over whether or not Plaintiff received a set of copies of a TADR slide deck which contained trade secrets. The text messages exchanged between Xiaolan Shen and Plaintiff remain unclear regarding whether Plaintiff's request to be sent certain Merck materials included only specific emails or also included the slide deck containing trade secrets. Although Plaintiff testified during her deposition that she neither requested nor was sent the slide deck, the presence of the

---

[1] Further, in her briefing on the issue, Plaintiff contends that several employees (Chawla, Wilmoth, and Addona) acted as managing agents, but she did not produce any evidence that they so acted. Her contention that these individuals ratified conduct that was oppressive, fraudulent, or malicious is unsupported by the evidence presented.

7

ambiguous message exchange creates a dispute of fact regarding whether she requested or received the documents from Shen.[2]

Months after her termination, Plaintiff discussed data generated by Loktev that she claims made no scientific sense and she facetiously described as "beautiful data." Although Plaintiff claims she did nothing with the data, she does not contest that Shen sent her Loktev's recent lab results, in the form of seven slides, and she discussed the data with Shen. This sharing of trade secret data, whether respected by Plaintiff for its accuracy or not, creates a triable issue regarding Plaintiff's access to and use of Merck's trade secret information.

In the course of her employment at Merck, there is evidence in the record that Plaintiff created, downloaded, printed, and used confidential and proprietary documents. In January 2018, Plaintiff admittedly sent a document containing trade secret information to her personal email address so she could review it on her two-hour commute. This incident was addressed and resolved when Plaintiff explained her motivation to send sensitive company information outside of the company system in order for her to review it in transit to work. In September 2022, Plaintiff emailed papers to her husband who worked in a similar field also as a scientist. Although the published papers did not contain Merck proprietary information, Plaintiff's supervisor was made aware of the transaction and Plaintiff was addressed verbally. Over the course of her sixteen-year career at Merck, Plaintiff shared other documents with her husband, including a manuscript sent for his editing and periodic resources she sent to get his input. In July 2022, Plaintiff shared copies of slides she was working on which included general experimental approaches. All of these instances represent potential divulgence of Merck's proprietary trade secret information. Again, this sharing of trade secret data creates a triable issue of fact regarding Plaintiff's use of Merck's trade secret information.

Accordingly, the Court DENIES Plaintiff's motion for summary judgment as to the misappropriation of trade secrets claim.

---

[2] Magistrate Judge Hixson found that "there is no basis to think Shen sent [Plaintiff] the TADR slide deck, and every basis to think he mailed her print outs of emails concerning her HR dispute." (Dkt. Nos. 162, 167, Order dated July 21, 2025.) This is not a definitive finding of fact entitled to judicial notice.

1   As the basis for the claim of breach of the employment contract is Plaintiff's suspected
2 misuse of Merck's trade secret information, the Court is similarly bound by the disputes of fact in
3 the record and DENIES Plaintiff's motion for summary judgment as to the breach of contract
4 claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Merck's motion for summary judgment, GRANTS the motion as to the claim for punitive damages, and DENIES the cross-motion for summary judgment filed by Plaintiff Nina Li.

Due to the Court's availability, the Court HEREBY CONTINUES the following dates: the pretrial conference shall be held on March 16, 2026, at 2:00 p.m. and the trial shall commence on April 6, 2026, at 8:00 a.m.  The parties are instructed to follow the Court's standing orders on civil trials for all interim deadlines.

**IT IS SO ORDERED.**

Dated: November 7, 2025

JEFFREY S. WHITE
United States District Judge

9